UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Erik Whitlock,<br>Plaintiff, | )<br>)<br>) | Civil Action No. 17-2036 |
| v. | )<br>) | **COMPLAINT** |
| Jefferson B. Sessions, IIII, in his official capacity<br>as Attorney General of the United States<br>of America, | )<br>)<br>)<br>) | |
|     Serve:  Jefferson B. Sessions, III<br>    United States Attorney General<br>    c/o Department of Justice<br>    950 Pennsylvania Avenue, N.W.<br>    Room B-103<br>    Washington, D.C. 20530-0001 | )<br>)<br>)<br>)<br>)<br>)<br>) | |
|     Channing D. Phillips<br>    Office of the United States Attorney<br>    Attention: Civil Process Clerk<br>    555 4th Street, NW<br>    Washington, DC 20530 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | A JURY IS DEMANDED |

PLAINTIFF'S ORIGINAL COMPLAINT

If Erik Whitlock had been judged on the quality of his work and his actual job skills, he would be serving this country as an FBI Special Agent.  But the FBI judged his vision skills through the prism of stereotypes about red/green color discernment instead of data, and revoked its offer of a Special Agent position, despite the fact that he had successfully been a law enforcement officer for more than ten years.  It did so without allowing him an effective accommodation, and without any good faith interactive process.  As soon as Whitlock learned of the FBI's perception of his vision skills, he went to medical professionals to address the FBI's

1

concerns about color discernment.  And he found that there is a special kind of contact lens that mitigates red/green discernment impairment.  Using this lens, he has normal red/green discernment.  The FBI then complained that the lens, in the abstract, could cause impaired depth perception, so Whitlock had his depth perception tested, and it too was normal. Still the FBI refused to consider any accommodation, so he appealed the FBI's decision, knowing that the agency does allow accommodations for those who have severe visual acuity issues.  Whitlock has normal acuity and needs no correction.  Yet the FBI rejected the accommodation that allowed normal color discernment, with no discussion with Whitlock about other potential accommodations.  It said "no" without any actual assessment of his ability to see, but based on sheer speculation.  Whitlock is determined to fight for the career he wants.  He is the kind of employee the FBI should embrace.  He is a long-term and successful law enforcement professional who, when faced with a roadblock to becoming a Special Agent, went to work and found answers.  His tenacity would serve the agency well.

## JURISDICTION AND VENUE

1. This case is brought pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, *et seq.* ("Rehabilitation Act").  This Court has jurisdiction of this case according to 28 U.S.C. §§ 1331 and 1343.

2. Venue is invoked pursuant to 42 U.S.C. 2000e, which governs venue in cases under the Rehabilitation Act.  The unlawful employment practices challenged in this lawsuit were committed in Washington, D.C.

## PARTIES

3. The plaintiff, Erik Whitlock, is an adult resident of Ft. Worth, Tarrant County, Texas.

4. The defendant, Jefferson Sessions, is the Attorney General of the United States of

America and is sued in his capacity as head of a department in the executive branch of the Federal Government within the meaning of 29 U.S.C. §§ 791 and 794.  A copy of this complaint is served on both the Attorney General and the U.S. Attorney for the District of Columbia.

## STATEMENT OF FACTS

5. Whitlock has worked as a Police Officer in the North Richland Hills Police Department for eleven years.  Recognizing his good work, the department promoted him to the position of Detective approximately four years ago.

6. Whitlock applied for the position of FBI Special Agent via the FBI Field Office in Dallas, Texas, in March 2013.  In April 2015, the FBI sent him a Conditional Offer of Appointment for the job.  The letter outlined the remaining requirements, including a fitness test, a background check, a drug test, a physical, and a polygraph exam.

7.  On June 1, 2015, the FBI administered the Ishihara Color Plate test, to test his ability to perceive and differentiate certain colors.  The assessment consisted of viewing a picture containing round circles of various hues, and identifying a number comprised of particular shades.  Notably, the Ishihara test only screens for one type of color deficiency, a red/green color deficiency.  It does not test for a blue/yellow deficiency.   The test indicated that Whitlock has an impairment in discerning red/green.

8. At the conclusion of the Ishihara examination, the FBI advised that his color vision might require further evaluation.  Whitlock also learned that he would need to supply a note from an orthopedic doctor, certifying that his back was physically sound enough to meet FBI job requirements.  Whitlock provided the cited orthopedic note and successfully completed all the aforementioned requirements of the conditional offer, save for the second vision test.

9. The FBI required that Whitlock undergo a second vision test, and on June 19, 2015, he

underwent the Farnsworth DV-15 Spectrum test. On October 5, 2015, the FBI Human Resources Division in Washington, D.C., notified him that an FBI medical officer had determined he suffered from "color vision deficiency" and would therefore be unable to safely perform the essential tasks of the Special Agent position. Whitlock asked to take the Farnsworth exam a second time, but was never provided with that option.

10. Whitlock was shocked at the FBI's decision since his vision skills had not impaired his ability to be a law enforcement officer and had not presented any issues over his entire career, in the line of duty or elsewhere. Accordingly, Whitlock sought out expertise in color vision issues to better understand the FBI's concerns.

11. On November 9, 2015, Whitlock met with Dr. Linda Jackson, who practices at the University of Texas Southwestern Medical Center in Dallas. Dr. Jackson advised him that his color vision impairment could be remedied by a specialized soft contact lens, the Zeltzer X Chrome, worn in the non-dominant eye. The Zeltzer X Chrome soft contact is similar to contact lenses commonly used by Special Agents and others to correct visual acuity deficiencies.

12. Once fitted with this lens, he passed the Ishihara Plate test with 100% accuracy (identified every plate correctly). Whitlock forwarded this information, along with an appeal letter, dated February 4, 2016, to the Dallas FBI Applicant Coordinator.

13. On August 2, 2016, the FBI advised Whitlock that his appeal was denied. FBI Human Resources Assistant Director, David Schlendorf, who works in Washington, D.C., wrote that the contact lens which remedied his disability was not approved for use under FBI medical standards. The letter indicated that such a lens *could* negatively impact depth perception or have other "distracting effects," potentially creating a safety concern.

14. Whitlock was determined to check whether his functional vision was impaired in the

real world, by the Zeltzer lens.  He  returned to Dr. Jackson on October 31, 2016, to either confirm or disprove the FBI's suspicions about his vision.  He asked Dr. Jackson to administer a second battery of vision assessments, including the Titmus stereo test for stereopsis (depth perception).

15.  The test results confirmed that the FBI's generalized suspicions about depth were not applicable to Whitlock.  Instead, he achieved the highest possible score on the Titmus stereo evaluation while wearing the Zeltzer X Chrome lens.  Moreover, Whitlock's visual acuity tested as 20/20 in both eyes while he wore the lens.  Dr. Jackson generated a medical report, stating that Whitlock had "excellent visual acuity, color vision and stereopsis" with the use of the Zeltzer contact in his right eye.  On November 3, 2016, Whitlock sent the aforementioned information related to the depth perception test via e-mail to Dr. Bruce Stinnett of the FBI medical division.  Months later, Dr. Stinnett responded by saying that the FBI's disqualification determination was final.  The FBI neither offered to discuss its concerns with him nor demanded that he take any more vision tests.  It simply revoked his offer, halting his dream to become a Special Agent.

16.  In addition to having his depth perception and other visual functions tested by Dr. Jackson, Whitlock also wore the lens while performing his regular Texas Peace Officer duties.  He qualified with his weapon while wearing this lens, and noted that there was no adverse effect on his shooting scores.  He used the lens for weeks, and in multiple venues while on duty as a Peace Officer, both during the day and at night.  That experience confirmed that he was able to perform law enforcement functions effectively and safely while using this accommodation.

17.  While the FBI claimed that a color corrective lens can, in the abstract, in some patients, cause vision problems, this is not the case for Whitlock.  The FBI, instead of making an individualized assessment of his functional vision skills, lumped him in with others who might suffer vision problems that Whitlock does not have.

18. Not only did Whitlock identify a successful accommodation, but the FBI actually has employed Special Agents in the field who have uncorrected red/green discernment issues and nonetheless are outstanding agents, capable of performing all the essential functions of the job. One of these Special Agents is still working in the FBI. A second Special Agent, who also suffers from a color vision deficiency, retired from the FBI after a successful career. Neither man made use of an accommodating lens while at work, but both were successful at the job, showing that a color vision impairment need not uniformly preclude people who are otherwise qualified. The FBI's speculation that Whitlock cannot perform the FBI Special Agent essential tasks is rebutted by both careful testing of Whitlock's vision and Whitlock's success as a law enforcement officer for more than eleven years.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

19. Whitlock presented a timely EEO complaint to challenge disability discrimination and failure to accommodate he experienced.

20. Neither Whitlock nor his counsel has ever received a final decision on his complaint, and more than 180 days have passed since the complaints were filed.

## COUNT I

<u>(Rehabilitation Act)</u>

<u>Disability Discrimination</u>

21. The plaintiff is a qualified individual that the FBI disqualified because of a visual disability. He is qualified to perform the essential functions of the Special Agent job, but has been denied that opportunity only because of his disability. He was also regarded as having a disability, and was denied the job because of a record of a disability. Defendant failed to accommodate his disability, even though it would have been quite easy to do so. Defendant, instead of participating in

the good faith interactive process the law requires, simply refused to engage with him, and its actions in this case can best be described as "just say no."

The actions of the defendant as set forth above constitute a violation of the Rehabilitation Act, 29 U.S.C. §§ 791, *et seq*.

## RELIEF REQUESTED

Erik Whitlock, the plaintiff, respectfully requests that the Court:

    A.    Order the FBI to make the plaintiff whole including, but not limited to, reinstating him to the position of special agent, paying him appropriate back pay and benefits with prejudgment interest in amounts to be proven, compensatory damages, front pay if he is not reinstated, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

    B.    Order the FBI to pay the plaintiff his costs, expert witness fees and reasonable attorney's fees incurred in pursuing the matter herein; and

    C.    Award plaintiff such other relief, legal or equitable, as may be warranted.

Plaintiff demands a trial by jury on all of his claims.

    Respectfully submitted,

FOR THE PLAINTIFF:

/s/ David R. Cashdan
David R. Cashdan
D.C. Bar No. 051342
Cashdan & Kane, PLLC
1150 Connecticut Ave. NW, Ste 900
Washington, D.C. 20036-4129
(202) 862-4330
Fax: (202) 862-4331
dcashdan@cashdankane.com

Katherine L. Butler
TX 0101
Texas Bar No. 03526300

1007 Heights Boulevard
Houston, Texas 77008
(713) 526-5677
Fax (888) 370-5038
kathy@butlerharris.com

John W. Griffin, Jr.
TX 0103
Texas Bar No. 08460300
203 North Liberty Street
Victoria, Texas 77901
(361) 573-5500
Fax (361) 573-5040
jwg@lawmgk.com